IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:

KELLY MARIE STILLWELL,

Debtor.

Case No. 06-10641-M
Chapter 7

## MEMORANDUM OPINION

Few things are as ingrained in the American way of life as the automobile. Unless one lives in an urban area with a sophisticated mass transit system, an automobile is considered indispensable. Without a car, one cannot shop, take the kids to soccer practice, or run any of the other errands which comprise a day in the life of an average American. The question before the Court is whether to allow a debtor to reaffirm a debt secured by a motor vehicle which, based upon the debtor's own admissions, she cannot afford. What follows is more or less a balancing act, wherein the Court (and, to some degree, the debtor) must balance the need, the desire, and the ability to pay for the vehicle. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052, which is made applicable to this contested matter by Bankruptcy Rule 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C.A. § 1334(b).[1] Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a). The issue presently before the Court is a core proceeding as defined by 28 U.S.C.A. § 157(b)(2)(A) and (O).

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*.

**Findings of Fact**

Kelly Marie Stillwell ("Debtor") filed an original petition for relief under Chapter 7 of the Bankruptcy Code on May 25, 2006. Based upon the information contained in her schedules and statement of affairs, debtor is currently unemployed. She has two small children, ages two and six months. Her husband, who is not presently before the Court, is employed as a plumber. His current monthly net income is $2,101.00. While the evidence presented to the Court indicated that Debtor's husband had the potential to earn additional income by working overtime, neither the likelihood of such overtime nor the amount of potential increased income was quantified.

The monthly household expenses for Debtor and her family total $2,486.67, meaning that the household expenses exceed the household income by $385.67 per month, or $4,628.04 per year.[2] Included in the household expenses is a payment of $570.81 to General Motors Acceptance Corporation ("GMAC"). Debtor and her husband are indebted to GMAC in the amount of $9,132.77. The debt is secured by a first lien upon the Debtor's 2002 GMC Yukon (the "Yukon"). Under the terms of the loan agreement between Debtor and GMAC, no interest accrues on the debt. As of June 1, 2006, Debtor and her husband had sixteen payments remaining under their loan agreement with GMAC. The Yukon is the Debtor's only motor vehicle.

On July 5, 2006, Debtor filed her reaffirmation agreement (the "Reaffirmation") with GMAC.[3] Under the terms of the Reaffirmation, payments were due on the 27th day of each month, commencing June 27, 2006. Although Debtor has counsel of record in this bankruptcy case, and

---

[2] The Court recognizes that the income and expense figures listed on the Debtor's schedules are estimates, and are unlikely to be precise to the penny. However, the figures represent the Debtor's best estimates, and are made under penalty of perjury. The Court finds that it is entitled to rely upon them.

[3] *See Docket No. 17*.

said counsel signed the Reaffirmation, counsel made no representation to the Court in the Reaffirmation regarding the ability of the Debtor to make payments under the Reaffirmation.[4] In Part D of the Reaffirmation, Debtor stated that her monthly income was $2,101.00, and her monthly expenses (other than the payment to GMAC), totaled $1,916.00, leaving her household with $185 per month to make a payment to GMAC of $570.81.  Debtor stated to the Court that she would be able to make the monthly payments to GMAC "by cutting back on other expenses."  In addition, Debtor stated that she hoped to earn additional income in the future by becoming a licensed realtor.

Debtor and/or her husband have made all payments to GMAC which have come due since the filing of the case.  When asked how they were able to do this, Debtor indicated that they had done and would do "whatever it takes" to retain the Yukon.  No additional detail was provided.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

The issues presently before the Court are governed by § 524(m)(1) of the Bankruptcy Code, which provides that:

> Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the

---

[4] This Court requires parties to use a reaffirmation agreement which requires counsel to advise the Court that "[a] presumption of undue hardship has been established with respect to this agreement.  In my opinion, however, the debtor is able to make the required payment."  In this case, counsel for Debtor made no such representation in the Reaffirmation.  At the hearing on approval of the Reaffirmation, counsel for the Debtor suggested that this was an oversight on her part.

>scheduled payments on the reaffirmed debt. This presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.[5]

Under this section, if a debtor's expenses exceed his or her income, a reaffirmation agreement is presumed to create an undue hardship. The court may then provide the debtor with an opportunity to rebut the presumption. If the presumption is rebutted, the agreement may be approved. If the presumption is not rebutted to the satisfaction of the Court, the Court has the discretion to not approve the reaffirmation agreement. The section applies even where counsel for the debtor has filed his or her declaration that the debtor has the ability to make the payment and that the agreement does not impose an undue hardship upon the debtor.[6]

This Court believes that it should not be in the business of approving reaffirmation agreements where the debt is something the Debtor cannot afford. Other courts have reached a similar conclusion. In *In re Payton*,[7] the debtors wished to reaffirm a debt secured by their motor vehicle. The court found that the debtors did not have enough income to make the payment. In refusing to approve the reaffirmation agreement, Judge Starzynski noted that:

>If the Debtors were to become re-obligated on this debt, even at the lower interest rate, they would be going underwater each month by $314. Not only is that a bad

---

[5] § 524(m)(1).

[6] *See In re Laynas*, 345 B.R. 505, 514 (Bankr. E.D. Pa. 2006) (holding that "Congress also provided for an additional layer of debtor protection [under § 524(m)(1)] by mandating judicial review of the reaffirmation agreements [w]here the amount of the scheduled payments due on the reaffirmed debt (as disclosed in the debtor's statement) exceeds the debtor's available income." (citations omitted)).

[7] 338 B.R. 899, 904 (Bankr. D.N.M. 2006).

>lesson for Debtors to be receiving from a bankruptcy court, but it sets them up for a default and the resulting deficiency judgment, garnishment of wages and execution on their assets. The Debtors would thus be vulnerable to collection efforts and unable to obtain a discharge for years afterward, a situation highly advantageous for the creditor but reciprocally a disaster for the Debtors and their children.[8]

Judge Starzynski went on to note that even in the absence of an approved reaffirmation agreement, it was possible that debtor and creditor could fashion an arrangement whereby debtor retained the vehicle without waiving the benefits of a discharge.[9]

In the present case, Debtor and her husband have $185 per month available to make a debt payment of $570.81. As a function of simple mathematics, there is a presumption that the Reaffirmation imposes an undue hardship upon the Debtor. To rebut that presumption, Debtor argues that: (1) her husband will work overtime; (2) she will soon obtain a real estate license; and (3) they have already made two payments under the terms of the Reaffirmation, thus demonstrating an ability to make 14 more payments to GMAC. After careful review, the Court finds none of these explanations sufficient to rebut the statutory presumption under § 524(m)(1).

The first two arguments made by the Debtor in support of the Reaffirmation are founded in speculation. Although she testified that her husband will work overtime if necessary to make the payments under the Reaffirmation, there was no evidence that he had any history of working overtime, or that he had any reasonable expectation that overtime might be available in the future. Similarly, there was no evidence that Debtor had any prospects for employment in the real estate field, if and when she obtains her real estate license. There was no evidence as to the amount of income which Debtor could expect to receive as a licensed realtor, nor any evidence as to how her

---

[8] *Id.*

[9] *Id.* at 905. The Court offers no opinion as to what GMAC should do or whether the Debtor is entitled to retain the Yukon in the absence of an approved reaffirmation agreement without the consent of GMAC.

employment might result in increased household expenses for items such as childcare. While the Court respects and admires the intent of Debtor to improve her economic condition, mere intent is not enough to rebut a presumption premised upon the fact that there is simply not enough money to go around.

The other argument advanced by the Debtor is a bit more persuasive. As the old saying goes, the proof is in the pudding. Having made the payments in the past, the argument goes, surely the Debtor has presented sufficient evidence that her household can make the payments in the future. The Court, however, remains unconvinced. The payment at issue is no small obligation. The monthly amount due to GMAC under the Reaffirmation ($570.81) is over 27% of the net monthly household income for the Debtor. It is almost as much as Debtor and her husband pay in residential rent, and more than they budget for food for a family of four (including two small children). Based upon the Debtor's statement of current income and expenses, her family has no health insurance and budgets a very modest amount ($50) for medical expenses.[10] It is easy to infer that the Debtor and her husband have been "robbing Peter to pay Paul" as they have made the payments to GMAC. One is left to wonder, if the Reaffirmation were to be approved, when the hammer would fall.

## Conclusion

The facts of this case create a presumption that the Reaffirmation imposes an undue hardship upon the Debtor and her family. The evidence presented to the Court does not persuade the Court otherwise and is not sufficient to rebut the presumption of undue hardship. The Reaffirmation Agreement between Debtor and GMAC is not approved.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

---

[10] *See Docket No. 1, Schedules I & J.*

Dated this 22nd day of August, 2006.

BY THE COURT:

*[signature]*

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

4671.2

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2006, I mailed by first-class United States mail a true and correct copy of the foregoing Memorandum Opinion to the parties listed below:

Kelly Marie Stillwell
1116 W. Knoxville Street
Broken Arrow, OK 74012

General Motors Acceptance Corporation
2740 Arthur Street
Roseville, MN 55113
Attention: K. Uecker, Agent

*Judy Johnson*